Case 3:25-cv-00198   Document 16   Filed 01/08/26 in TXSD   Page 1 of 6

United States District Court
Southern District of Texas
**ENTERED**
January 08, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| L.W.,[1] § § <br>    Plaintiff. § § <br> V. § <br> § <br> COMMISSIONER OF SOCIAL § <br> SECURITY, § § <br>    Defendant. § | CIVIL ACTION NO. 3:25-cv-00198 |

## OPINION AND ORDER

    Plaintiff L.W. seeks judicial review of an administrative decision denying her application for supplemental security income under Title XVI of the Social Security Act (the "Act"). L.W. and Defendant Frank J. Bisignano, the Acting Commissioner of the Social Security Administration (the "Commissioner"),[2] have briefed their positions. *See* Dkts. 8, 15. After reviewing the briefing, the record, and the applicable law, I reverse the Commissioner's decision and remand for further proceedings consistent with this opinion.

## BACKGROUND

    On April 22, 2021, L.W. filed a Title XVI application for supplemental security income. Her application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a

---

[1] On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions. This court has taken that guidance a step further in the interest of claimant's privacy and will use only initials in public opinions.

[2] Bisignano became the Commissioner of Social Security on May 7, 2025. Bisignano is "automatically substituted" as the defendant in this suit. Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

hearing. Following the hearing, the ALJ issued a written decision finding that L.W. was not disabled. L.W. filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See Salmond*, 892 F.3d at 817. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that L.W. "has not engaged in substantial gainful activity since April 22, 2021, the application date and amended onset date." Dkt. 7-2 at 28.

The ALJ found at Step 2 that, L.W. "has the following severe impairments: lumbar degenerative disc disease, diabetes mellitus, asthma, obesity, fibromyalgia, obstructive sleep apnea, anxiety, and depressive disorder, generalized anxiety disorder and history [of] intellectual disorder." *Id.*

The ALJ found at Step 3 that L.W. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.* at 29.

Prior to consideration of Step 4, the ALJ determined L.W.'s RFC as follows:

> [L.W.] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl. She can have occasional exposure to pulmonary irritants such as noxious fumes, odors, dust, and gases. The claimant can understand, carry out and remember detailed, but not complex instructions. She requires a cane to ambulate.

*Id.* at 32.

At Step 4, the ALJ found that L.W. "has no past relevant work." *Id.* at 38.

At Step 5, however, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [L.W.] can perform." *Id.*

Accordingly, the ALJ found that L.W. "has not been under a disability, as defined in the Social Security Act, since April 22, 2021." *Id.* at 39.

## DISCUSSION

This appeal presents two issues for my review: (1) whether the ALJ properly evaluated L.W.'s use of a cane; and (2) whether the ALJ properly evaluated L.W.'s subjective complaints regarding her need to frequently alternate positions. I need address only the latter of these issues.

In her opinion, the ALJ acknowledged L.W.'s reported need "to alternate between sitting and standing during the day." Dkt. 7-2 at 33. Yet, the ALJ made no allowance for L.W.'s reported need to alternate positions when crafting L.W.'s RFC. In rejecting those of L.W.'s subjective complaints that were not consistent with the ALJ's RFC—which necessarily includes L.W.'s reported need to alternate positions—the ALJ said, in relevant part: "Physical examinations have also revealed no ongoing loss of motion of the [L.W.]'s spine." *Id.* at 35. Yet, this statement is at odds with the ALJ's own recounting of L.W.'s medical history.

For example, the ALJ noted that "[w]hen seen in October 2022, with reports of worsening pain that radiated from her back into her bilateral hips and right lower extremity, . . . [t]here were no reports . . . of any loss of motion of the claimant's lumbar spine." *Id.* at 34. "During a March 2023 examination," however, L.W.'s "range of motion of the cervical spine was decreased with 45 degrees of flexion, 45 degrees of extension, 30 degrees of lateral flexion, bilaterally; and 60 degrees of rotation, bilaterally." *Id.* During that same March 2023 examination, L.W.'s "[r]ange of motion of the thoracic spine was also decreased with 70 degrees of flexion; 20 degrees of extension and lateral flexion, bilaterally; and 15 degrees of rotation, bilaterally." *Id.* During an August 2023 examination, L.W. "displayed

4

tenderness over the mid-to-lower lumbar paraspinals bilaterally and flexion of the lumbar spine was limited." *Id.* Accordingly, the ALJ's own summation of L.W.'s medical history revealed an ongoing loss of motion of L.W.'s spine, contrary to the ALJ's reasoning. It is difficult to make sense of the ALJ's reasoning when the ALJ makes statements that are at odds with the ALJ's own summation of the record.

Dr. Brian Harper and Dr. Prianka Gerrish, the medical examiners at the initial and reconsideration level—neither of whom examined L.W.—both opined that L.W. could "stand and/or walk for a total of about six hours in an eight-hour workday" and "sit for a total of about six hours in an eight-hour workday." *Id.* at 36. Neither opined on L.W.'s need to alternate positions. The ALJ found these medical opinions only partially persuasive because the "degenerative changes of [L.W.]'s lumbar spine with some use of an assistive device is more supportive of a conclusion that [L.W.] should nerve [sic] climb ladders, ropes, or scaffolds." *Id.* at 37. Thus, the ALJ rejected these medical opinions in favor of postural limitations. Because neither Dr. Harper nor Dr. Gerrish opined on L.W.'s need to alternate positions, and because the ALJ rejected these medical opinions in favor of greater postural limitations, these medical opinions do not support an analysis that is silent as to L.W.'s reported need to alternate positions.

A finding of no substantial evidence is warranted "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Ramirez*, 606 F. App'x at 777. The ALJ rejected the only medical opinions of record in favor of greater postural limitations. The ALJ *credited* L.W.'s report that she needed a cane to ambulate by including such a requirement in the RFC. Thus, it is difficult to understand why the ALJ did not also credit L.W.'s reported need to alternate positions frequently. The ALJ failed to explain this choice. If the ALJ's statement that "[p]hysical examinations have also revealed no ongoing loss of motion of the [L.W.]'s spine" was meant to be the explanation for why she rejected L.W.'s reported need to alternate positions, that logic falls apart when compared to the ALJ's own summary of L.W.'s medical history, which revealed an ongoing

loss of motion of L.W.'s spine. *Id.* at 35. Because there is a conspicuous absence of credible choices and no medical evidence to controvert L.W.'s reported need to alternate positions, I must find that the ALJ's decision is not supported by substantial evidence.

The ALJ's failure to explain why she rejected L.W.'s reported need to alternate positions—after *accepting* L.W.'s reported need for a cane—is not harmless error. According to the Administration's own adjudicative guidance:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

SSR 83-12, Adjudicative Guidance. Thus, it is conceivable "that a different administrative conclusion would have been reached" if the ALJ had properly evaluated L.W.'s reported need to alternate positions. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Accordingly, this matter must be remanded.

## CONCLUSION

For the reasons discussed above, I reverse the Commissioner's decision and remand this matter to the Commissioner for further proceedings consistent with this opinion.

A final judgment will issue separately.
SIGNED this 8th day of January 2026.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE